The next case for argument is 17-1852 Leitner-Wise v. LWRC International The Patent Act of that time said, persons interested in the patent at the time when the suit was brought. This language was removed from the statute in the current act in the section which we speak to today, which is 35 United States Code 100, which speaks to a patentee. The statute defines the patentee to include the party to whom the patent was issued without qualification. It doesn't say that they have a patentee, the person to whom the patent was issued, and they didn't give up their rights. It says to the inventor. That is who the patentee speaks to. Your view that a patentee, when there's no dispute, that all right, title, interest, and can complete all substantial rights, every right to a patent is transferred from a patentee to, say, his employer in the natural course of things. The patentee, nonetheless, has a right to bring a patent infringement suit in his own name, absent his employer. Because he was the person who received the patent initially, even though he sold it entirely lock, stock, and barrel without question. Your interpretation of the statute is that guy still gets to bring a suit in his own name? This court recognized that's a yes or no question. Yes, that is the point. I'm reading the statute, and that's what the statute says. And I assume you don't have any case support for that proposition. I cannot find any cases which speak specifically to the patentee completely alienating the rights. I have two other kinds of cases, which I do see repeatedly. First of which is that a subsequent licensee who then alienates their rights loses the right to litigate. And the other kind is that a subsequent licensee must bring in the inventor as a named party into the lawsuit. This court recognized in Arconid Incorporated versus Merit Industries, 939 Federal 2nd, 1574, the act of invention itself invests the inventor with a common law or natural right to make use or sell his invention, absent conflicting patent rights and others. A patent, in effect, enlarges that natural right, adding it to the right to exclude others from making or using or signing the patented invention. The inventor sold his patent subject to the retention of his right to be paid for this invention. And the LWRCI could not receive any more than LWRC received when it received it from Leitner Wise. And as this court recognized in Bapel Textile and Machine and Kamanga Shell Shaft versus Mechanica Euro Detalia Society Arizona in 1991, 944 Federal 2nd, 870, 875, a patent may be divided and assigned or retained or in whole part. As a general rule, the rights in an invention belong to the inventor. And that's the Supreme Court in 2011, Board of Trustees versus Leland Stanford Junior University, V. Roche Molecular Services. The inventor may assign his rights to the invention and the recording creates a presumption of validity. We have never had an evidentiary hearing on what it was that Leitner Wise retained when he sold this patent to the Leitner Wise Rifle Company. We have provided to this court. Well, isn't that a legal question at the end of the day? I mean, these contracts exist. There's right contracts that we had before us exist. Yes, yes. I'm looking at Appendix 60. This is the language which we rely on, which says that the- This is the employment agreement, right? This is the employment agreement. I'm on page eight of the employment agreement. So do you just dispute the validity of all of these exit agreements, assignment agreement, termination agreement? We are very concerned about some of them because we have seen some documents in substance. You dispute the validity of them? Yes, in some degree. In some issues, yes. We have actually started litigation in another case regarding some of those. I mean, which one of these, in your view, is invalid? Oh, most certainly Appendix 65, we assert is completely invalid because it's invalid on its face. This is Plaintiff's Exhibit D. This is the assignment of invention and patent application from April 18th of 2008. In this instance, the document falsely identifies the inventor as someone other than the inventor in this case. It cannot be reasonably disputed that Paul Leitner Wise invented the self-regulating action for this rifle in the 581 patent. His name appears in the 581 patent. This is not a case where the provenance of the invention is disputed. It's engraved in stone at the Patent and Trademark Office. What we have here in 65, however, is Leitner Wise Rifle Company being identified as the inventor. We posit to this court, and we have repeatedly stated, that this assignment- Yes, and it says that it's invented by a signer. This would be the fifth line after the underlying section. The signer is not Leitner Wise himself. It is this company. This document is defective on its face because it misidentifies the inventor. Also, Leitner Wise himself had nothing to do- I'm missing. I'm just looking at A65. I just am not seeing what- If we go to the fifth line, and there's an underlying section that says, self-cleaning gas operating system for a firearm. Immediately after that, it states, invented by a signer, who is identified in the first line as this company. Companies do not invent things. People do. We assert that Leitner Wise himself, the plaintiff in this case, was removed from this assignment because he had an existing right to these royalties, and that this document is a fraud in that it doesn't identify him as the inventor. It is defective on its face. It is void. And for this reason, to respond to Judge Chen's question, we do fully dispute the provenance of that assignment. The document 64 was an assignment we do not dispute, but it is in execution and in furtherance of the employment agreement. The employment agreement states, there is a 0.5% royalty on each of these firearms. In exchange for that, you will execute these documents, which assign us the right to use it. It's necessary for us in furtherance of this contract. The defendants in this case have argued that, for some reason, Leitner Wise simply assigned this to them gratuitously, or assigned this to Leitner Wise Rifle Company gratuitously. Well, this is a self-defeating argument, because if you do not have consideration that is discussed in the employment agreement, this assignment is gratuitous and may be revoked at any time. It is illusory. Unlike the case in which Memory Link Corporation versus Motorola Solution, a 2014 case of this court, 773 Federal 3rd, 1266 to 1271, consideration was not actually exchanged. This court, in applying Illinois law in that case, found that consideration is a basic requirement of a contract, but nominal consideration will suffice. We found a case in Memory Link, it consideration of the sum of $1 to us in hand-paid and other good and valuable consideration. This case is distinguished in that Leitner Wise properly asserts, and this contract does not speak otherwise, that he has never received anything for the use of his invention. So absent the contract that says he's entitled to half a point, the first assignment on 64 is illusory because it's without consideration. Is it half a point, or is it 0.05 of a point? We assert that it is a half a point, and that the 0.05 is typographical. We assert that the words. OK, so in the employment agreement, when I see 0.05, I should read it as 0.5. Yes, and we assert that the written-out language should control there, and that that is a typographical error. And we've repeatedly put C in it. And this assignment document at A64, it is around the time when he left LWRC, is that right? Right, that's correct. OK, and that was the same time when he was released from all non-compete agreements. Is that right? When he was left. And then his shares were bought out. His shares were bought out by a third party. We assert that the defendants improperly conflate that with somehow that being the consideration. The bottom line is Leitner-Wise would not give up this patent, which has made hundreds of millions of dollars for these companies, unless he was going to get something. And he has received absolutely nothing. And we have repeatedly asserted that to the district court. But without the benefit of a jury trial, without the benefit of discovery, the court latched on to some documents which were unauthenticated by the defendants, to which we asserted was an improper business records exception, because the person, Mr. Bernstein, who authenticated them had no personal knowledge of them whatsoever. And that the court, without a notice or the opportunity to respond, converted that matter into a Rule 56 motion for summary judgment with no further proceedings. We assert that that was improper and that Leitner-Wise has never had the opportunity to prove his case. We're into your rebuttal, so why don't we hear from the other side? So you all are dividing your time. That's a little difficult for us. But we're running the clock separately. And if you go over, it's going to come out of your friend's time. So you're in charge of that. Thank you. I'm actually hoping to do it the other way around and leave him with extra time. My name is Laura Carroll, and I'm the attorney for Sig Sauer, who is one of the defendants in this case. I wanted to let the court know how my brother counsel, Mr. Fishman, and I are dividing this up. I am because, let me back up, Sig Sauer has only been accused of charge under counts one and two of the complaint. It's been accused of patent infringement, and there's an unjust enrichment claim. The breach of contract claim is solely against LWRCI, Mr. Fishman's client. Was your friend correct that with these documents, these assignments and whatnot, never authenticated or improperly authenticated? Mr. Fishman will address that, but my understanding is that they did have an officer of LWRCI or LWRCI's parent company submit a declaration authenticating them to the court. What I wanted to address briefly is the standing issue and the unjust enrichment claim, because both of those claims are against both defendants in this case. Your friend, with regard to the standing for infringement, is asserting that the language of the statute establishes the inventor retains his rights here. What do you have in case law that subverts that? We have probably close to a dozen cases that say that's not the case, Your Honor. Mr. Lightner Wise, when he executed the assignment in 2006, that's the document that's at appendix 64, it says he hereby sells and assigns to LWRC, which is, I understand, a predecessor company, his entire right, title, and interest. And at that point, what became the 581 patent was still a pending application. And that entire right, title, and interest language has been repeatedly held by both this court and the Supreme Court to constitute conveyance of all substantial rights, leaving the inventor, or whoever the predecessor owner is, could be the inventor, could be an original assignor, without any rights. What Mr. Lightner Wise, and those cases include the Morrow case, Abraxas-Vaupel, the Rood case, a very old Supreme Court case, which we cited, Jim Arnold, I'm just doing this by plaintiff names because there's a lot of them, and then an unreported decision by this court, SGS Thompson. What Mr. Lightner Wise's counsel keeps talking about, well, but his client retained the royalty right, we don't even contend that's accurate. What the royalty described in the employment agreement is is the form of compensation. The transfer in the assignment doesn't say I'm assigning these rights, but I'm keeping a royalty right, as though that's some kind of right you could go pursue against infringers. Instead, the compensation he agreed to was a royalty. And again, look at the employment agreement, which was attached to his complaint, so there's no issue as to authenticity. In that agreement, he's not getting all royalties, contrary to what he says in the brief. He's getting royalties at a certain percentage on products made by LWRC, the other predecessor company. And he's only getting those if the company's making a certain amount of profit, and there's also a net calculation, so it's not on gross sales. There's a whole lot of factors in there. So it's a very conditional type of, will you get anything? I know he's complaining he hasn't gotten any money. We're a non-party. We're not involved in this corporate structure. We don't know if that's the case or not, but what he was getting is a form of compensation. That's what he was told he would get if there were sales and if LWRC was profitable. He did not retain all royalty rights. Even if he had, however, even if he had, that's not enough. There are plenty of cases we cited where retaining that wasn't sufficient. Two more quick points on illusory argument that he's made because he didn't get anything. That was not raised below. He's not preserved that for appeal, and we know he's seeking to enforce the contract. He's not seeking to rescind it. What about his argument that the assignment at A64 is invalid because he never received any consideration for that assignment? That isn't how, well, first of all, if he's saying it was, he says now it's illusory, he would have to, it wasn't illusory at the time. It was kind of on the come. I hope I will get money because I hope you'll make products and I hope you'll sell products. I'm talking about the assignment? Yeah, oh, in the assignment. He's saying today that the assignment is an invalid contract, no consideration. Well, it recites that there is consideration, and the recitation of consideration alone is deemed to be sufficient. That also segues into the contracts that Mr. Fishman will talk about, and in fact, there was ample consideration in actually giving up other royalty rights in those documents, but I will let him address that. The final point I wanted to make was on the unjust enrichment argument. First, I would note that Mr. Lightner-Wise didn't really address those arguments below, so we think he's waived them. We would note that the unjust enrichment contention as stated is preempted by the Patent Act as to the types of damages it's seeking, as to what it's seeking, and we've briefed that rather extensively. The other thing we would note on unjust enrichment is that it does require, even if it weren't preempted, it would require conveyance of a benefit by Mr. Lightner-Wise, in this case, to Sig Sawyer. Mr. Court didn't deal with preemption. It did, in a footnote it did. It doesn't need to reach that because it likely would be preempted, too. It agreed with us, but I just wanted to note we had raised that below. The district court said, if I need to reach that, I likely would find preemption, too. Okay. Thank you very much. Good morning to the panel, and may it please the court. My name is Noam Fishman, and I represent LWRCI. If I could take just 30 seconds and talk very briefly about the history of the corporate structure here to make sure that that's clear for the panel. LWRCI currently owns the 581 patent. LWRCI purchased the assets from the predecessor company, Land Warfare Resources Company, which before that did business as Lightner-Wise Rifle Company. Lightner-Wise Rifle Company, Land Warfare, sold its assets to a company named Riftec. In 2008, Riftec created LWRCI and transferred the assets to LWRCI. Why does the corporate structure matter? Why is this relevant to the panel? Well, that's the distinction between Appendix 65, the assignment that Mr. Lafon referenced in his argument, and Appendix 64. That's the fundamental difference. The panel takes a look at Appendix 65. You'll see that it's dated in 2008. That's part of the transfer process and the sale of the assets that happened long after Mr. Lightner-Wise left Lightner-Wise Rifle Company. In 2006, October 2006, that's the relevant time period for determining what, if any, rights Mr. Lightner-Wise has to this 581 patent that at the time was the 141 patent application. Fundamentally, this case, from LWRCI's perspective, presents one critical question to the court. Did the district court err in considering a host of agreements that the appellant signed in October 2006 that severed his relationship with the company at the time, Lightner-Wise Rifle Company? Can I just ask you a question now? Your discussion caused me to take another look at Appendix 64, because you mentioned it goes to 2006. Why does the notary's signature have a date of 2008? That's, and you'll see that in a bunch of other documents, Your Honor. That's the date that the notary's authority expires. It's the expiration date, and it's actually, it's a little bit smudged here. Yeah, I can't read that. Yeah, you'll see in other documents that I'm gonna walk through that these are the same dates. Got it. Yeah, okay. The district court disagreed, and respectfully, LWRCI submits this panel should as well, for four reasons. First, there was no abuse of discretion at the district court level. The district court considered the declaration of Kevin Bernstein, who's a corporate officer for both RIFTEC and LWRCI. Mr. Bernstein authenticated the contracts that are kept in the ordinary course of business at RIFTEC's offices, and these contracts were produced to the court as they are kept in the ordinary course of business. The district court, Judge Hazel pointed out and relied upon the fact that Mr. Leitner-Wise did not submit any opposing declaration with his opposition papers before the district court. Now, Mr. Leitner-Wise, on appeal, has argued, this dovetails into the notice argument he makes in his papers. He argues that he lacked notice that the district court might convert this motion from a Rule 12 motion to a Rule 56 motion. He makes that argument despite the fact that LWRCI captioned its motion before the district court as a motion to dismiss, or in the alternative, a motion for summary judgment. He makes this argument despite the fact that LWRCI submitted the declaration attached to the motion to dismiss, along with the contracts. And he makes this argument despite the fact that he makes the same arguments before Judge Hazel at the district court that he makes before this court. He argued there that the court should discredit the declaration. He argues here that the court should discredit Mr. Bernstein's declaration. These are the same arguments, and the fact that he made the same arguments below undermines the notion that we have a notice issue in this case. Third, we have a series of documents, and I'll take a minute to walk through the documents systematically, that fundamentally form the foundation of his exit from Lightner Wise Rifle Company, and that you'll see these documents were executed on the same day with the same notary public authenticating the signatures of all of the documents. And fourth and finally, and it's an issue that I don't believe the district court addressed, but it's an issue of law that this panel can address de novo, and we've addressed it in our briefs, which is a statute of limitations issue. These contracts or these rights are from 2005 or 2006. We're talking about a contractual right to a royalty payment that Mr. Lightner Wise himself alleges he was never paid at any point in time. So under the discovery rule, he had to bring that claim assuming Virginia law applies, and that's the law that the district court applied, within five years. He didn't even bring this claim within five years of RIF tech. I don't understand, because your friend who disclaimed knowing a lot about the details, but said that the royalty payment was conditioned on a whole bunch of circumstances. So if that is the case, then it could have been five years where the circumstances were such that he wouldn't have been entitled. So his claim to the royalty may only have arisen more recently. Yes, Your Honor. But under the case law, which we cited in our brief, there's a duty to investigate. So if you believe that you potentially are entitled to a royalty, you have a requirement to ask. And so he would have to plead in his complaint facts that sufficiently show that he did an inquiry. He's on inquiry notice that he has to bring. So he never asked. Certainly, he hasn't pled it, which is required to do under the statute of limitations jurisprudence. So if it's OK with the panel, we'll just take a second before I lose my time to walk through these agreements somewhat systematically. They start on Appendix 141, which is the termination letter that I believe Judge Chen referenced in his questioning to Mr. Lafon. Appendix 141 itself references four other documents, one of which is the assignment that Ms. Carroll discussed before the court. The other is an equity purchase agreement which forms the foundation, among other things, for the consideration that Mr. Leitner-Weiss received upon his exit from the company. You'll see this was a privately held company. There is no open market for the securities. And Mr. Leitner-Weiss received $192,000 for his exit from the company. That's part of the equities purchase agreement that's at Appendix 156. You'll see, just focusing on 141 for a second, that there's a release in here. And most notably, about five lines from the bottom, Mr. Leitner-Weiss releases, and I'll quote, I'm starting two words from the end on the right, one, two, three, four, five lines from the bottom, all claims arising out of your employment and all claims arising out of the employment agreement, which is itself a capitalized term. We can go to sub I in the middle of the page to see that the employment agreement, as defined as that certain employment agreement dated April 11, 2005, which Mr. Leitner-Weiss forms as the foundation for the royalty payment that he believes he's owed. Now, this document isn't signed by Mr., it's not signed by Mr. Leitner-Weiss, right? It's signed by somebody who's the president of the company? It's on page 144, Your Honor. Oh, I'm looking at 143. I see, okay. Okay, and you'll see also, it's actually where I was gonna go next, you'll see that it's dated October 31, 2006, the same date that he dates the assignment that we talked about before. Also, it is notarized by the same notary, and you'll see to your questioning before, Your Honor, the date that her commission expires. Okay, we're out of time, thank you. Thank you, Your Honor. First of all, I'd like to say, Mr. Fishman, that's a fine argument that is made, but it's an argument that belongs as a closing argument at the end of a jury trial, which Mr. Leitner-Weiss did not receive. The questions that have repeatedly been raised  issues of the present, of fact, to which there has never been any discovery, and there has never been any jury trial to which Mr. Leitner-Weiss is entitled under the Seventh Amendment. Mr. Leitner-Weiss, upon his removal from this company, all copies of the contracts which he had in his office were stolen. His office was broken into, his office was cleaned out. He never had a copy of any of these contracts until 2014, when they were discovered by an immigration attorney who was working on his case and found a copy of his employment agreement in his file. The employment agreement specifically states that his right to these royalties, none of the other compensation, but his right to these royalties shall survive his termination. His assignment in 2006 says, in consideration of a dollar and other consideration, which is specifically referenced in the employment agreement. They have J. Patrick Bryan, who is the signature to so many of these documents, lives 60 miles away, he's in Middleburg. I'll go pick him up in my car and bring him in here. But yet, the person who signed the documents, the person who is most able to authenticate these documents was never brought in, was never subject to cross-examination, never authenticated any of these documents. But instead, Mr. Bernstein, who had nothing to do with this execution of this document, says that, oh, I was in charge of that company, too, or some company that's related to it. So I get to make a business records declaration about something I know absolutely nothing about. Your time has expired. Thank you, Your Honor. For these reasons and the reasons set forth in my briefs, I ask that this matter be reversed and remanded to the district court. Thank you. We thank both sides.